```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | |
| CLIFFORD WAY | NO. 94-379-2 |

### MEMORANDUM

**Joyner, J.**                                    **December 17, 2020**

### Introduction

Clifford Way moves for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). He has met the procedural requirements of the statute and so we consider the merits of the motion. We grant the motion because we find: (1) extraordinary and compelling reasons justify reducing the sentence, (2) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction, and (3) Mr. Way is not a danger to the community or an individual as provided in 18 U.S.C. § 3142(g). See United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1 (3d Cir. Oct. 29, 2020) (per curiam) (finding the district court appropriately considered the defendant's risk of contracting COVID-19, the section 3553(a) sentencing factors, and danger to the community in denying a motion for compassionate release); see also United States v. Nunez, No. CR 17-58-1, 2020 WL 5237272, at *4 (E.D. Pa. Sept. 1, 2020). We, therefore, reduce the term of

imprisonment to time served.

## Extraordinary and Compelling Reasons

Mr. Way's health conditions place him at greater than average risk of serious illness or death from COVID-19 and are extraordinary and compelling reasons justifying a reduction in sentence. Courts have varied widely in determining which combinations of health and other conditions qualify as extraordinary and compelling. In the context of the COVID-19 pandemic, we must consider the defendant's specific risk of serious illness or death if infected with the virus and the magnitude of the danger that the defendant will contract the virus given the situation at his facility and in the larger community. United States v. Babbitt, No. CR 18-384, 2020 WL 6153608, at *5 (E.D. Pa. Oct. 21, 2020) (examining "the circumstances of the COVID-19 pandemic, the defendant's health conditions, the defendant's age and the risk of contracting COVID-19 at the defendant's facility"); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

Mr. Way is fifty-four years old and suffers from numerous serious health conditions, which put him at potential increased risk of grave illness or death from COVID-19. Mr. Way has both

pulmonary sarcoidosis and hypertension.  Sarcoidosis is an inflammatory disease that affects the lungs and has caused damage to Mr. Way's lungs.  Def. Mot. Ex. B at 81, Doc. No. 188 (showing the results of a June 2020 chest x-ray).  Mr. Way also sometimes has difficulty breathing.  According to the Centers for Disease Control and Prevention ("C.D.C."), people with damaged or scarred lung tissue from conditions like sarcoidosis "might be at an increased risk for severe illness from the virus that causes COVID-19."  People with Certain Medical Conditions, C.D.C. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020).  Mr. Way's doctors manage his sarcoidosis with periodic doses of prednisone, a drug which suppresses the immune system making patients extremely vulnerable to infections, including COVID-19.  People in such an "[i]mmunocompromised state (weakened immune system) from . . . immune weakening medicines" also "might be at an increased risk for severe illness," according to the C.D.C.  Id.  Hypertension, another one of Mr. Way's conditions for which he takes medication, similarly puts him at potential increased risk.  The government argues that Mr. Way's conditions do not justify extraordinary relief because his conditions put him at potential, not definite, increased risk.  Gov't. Resp. at 18, Doc. No. 191.  The C.D.C. instructs, however, that "[t]he more underlying

3

medical conditions someone has, the greater their risk is for severe illness from COVID-19." People with Certain Medical Conditions, C.D.C. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). Mr. Way suffers from three conditions with potential increased risk. Mr. Way's combination of risk factors does present extraordinary and compelling circumstances because he faces a dangerous possibility of serious illness or death from COVID-19. See, e.g., United States v. Croft, No. CR 95-496-1, 2020 WL 3871313, at *3 (E.D. Pa. July 9, 2020) (granting compassionate release to an armed robbery defendant with sarcoidosis and hypertension); United States v. Rodriguez, 451 F. Supp. 3d 392, 400-01 (E.D. Pa. 2020) ("the outbreak of COVID-19 and [defendant's] underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence").

    Mr. Way faces an "actual, non-speculative risk of exposure to COVID-19" at FCI Schuylkill. United States v. Somerville, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020). Tragically, 166 federal inmates have died due to the virus and 32,805 inmates have tested positive nationally, according to the Federal Bureau of Prisons. COVID-19 Cases, BOP https://www.bop.gov/coronavirus/ (last updated Dec. 16, 2020).

This means that about twenty-three percent of all federal inmates have tested positive for COVID-19.  Id.  COVID-19 rates are on the rise at FCI Schuylkill.  One hundred and forty-nine inmates and twelve staff at the facility currently have confirmed active cases of COVID-19.  Id.  Even taking proper precautions, Mr. Way could contract COVID-19 at FCI Schuylkill.

Taken together, Mr. Way's risk profile, the danger of infection at FCI Schuylkill, and the rising rates of COVID-19 across the country constitute extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i).

### 18 U.S.C. § 3553(a) Sentencing Factors

The section 3553(a) factors do not outweigh these extraordinary and compelling circumstances.  We cannot reduce Mr. Way's sentence if doing so would undermine the goals of his original sentence, considering the section 3553(a) factors. United States v. Walls, No. 2:12-CR-00173, 2020 WL 6390597, at *11 (W.D. Pa. Nov. 2, 2020).  Almost twenty-six years ago, Mr. Way was sentenced to eighty-four months of imprisonment and five years of supervised release after pleading guilty to conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C § 846, distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and aiding and abetting, in violation of 18 U.S.C. § 2.  Mr. Way completed his term of imprisonment, but subsequently violated the terms of his

5

supervised release four times.  Most seriously, in 2006, Mr. Way violently attacked his ex-girlfriend.  Mr. Way was convicted in state court on multiple counts related to the incident and the Court of Common Pleas sentenced him to ten to twenty years' imprisonment.  In 2009, this Court sentenced Mr. Way to forty-nine months' incarceration for violating the terms of his supervised release to be served consecutively to his state sentence.  Mr. Way served twelve years in state custody for the offense underlying the violation and he has already finished approximately sixty-five percent of his federal sentence.  He has served about twenty-nine months in federal custody and has around four months of credit for good conduct.  His anticipated release date is December 26, 2021.

    Mr. Way's crimes were serious, but the commission of serious crimes does not foreclose the possibility of compassionate release when, as here, the term already served has achieved the purposes of sentencing.  See Somerville, 463 F. Supp. 3d at 602. (noting that "almost *all* federal prisoners have committed serious crimes" and yet some are granted compassionate release).  Mr. Way has spent a substantial amount of time in prison and his term served reflects the seriousness of his violation.  Mr. Way has received sufficient punishment and his sentence, even if shortened, shows the necessary respect for the law, while also deterring similar criminal conduct.  Mr. Way has

met the educational goals of his incarceration commendably participating in many vocational and training programs in federal prison.  Mr. Way's demonstrated rehabilitation and sincere remorse for his crimes will serve to protect the public from any future crimes.  Because Mr. Way has completed much of his sentence and due to the particulars of Mr. Way's circumstances, there is limited risk of unwarranted sentence disparities.

Shortening his sentence now will not offend the purposes of sentencing, especially given the current pandemic and Mr. Way's health risks.  The pandemic and Mr. Way's specific vulnerability to COVID-19 were not considerations in 2009 at the time of sentencing, but they must be now.  Given the potential harm that continued incarceration now poses, serving the remainder of Mr. Way's original sentence is not necessary to comply with the purposes of sentencing.

### Danger to the Community

Sitting, as we are, fourteen years after the violation of supervised release, the Court has seen no recent indication that Mr. Way is currently a danger to the community.  This Court cannot grant compassionate release if a defendant is a danger to the safety of any other person or to the community, upon consideration of the 18 U.S.C. § 3142(g) factors.  United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *31 (E.D. Pa.

July 6, 2020). Although Mr. Way has violated the terms of his supervised release four times, the most recent violation was fourteen years ago. Since the time of that violent incident, Mr. Way has spent almost a decade and a half in prison and has worked to improve himself. Mr. Way has focused on his rehabilitation and has not evidenced that he is danger to the community any longer. During his current federal incarceration, he has had no disciplinary incidents. Mr. Way's educational achievements and employment in prison have contributed to his rehabilitation. Mr. Way told the Court in his own words, "I have given my best effort to be a better person and a vital part of society." Def. Pro Se Letter at 2, Doc. No. 187. Mr. Way intends to live with his sister in Philadelphia upon release. He will rely on this family support as he transitions back into the community. We conclude that Mr. Way is no longer a danger to public safety.

## Conclusion

We grant the motion under U.S.C. § 3582(c)(1)(A)(i) because extraordinary and compelling circumstances compel Mr. Way's release. We have considered the 18 U.S.C. § 3553(a) factors and we find no danger to the community. An Order follows.